UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KYUNG SOOK JONES,

Plaintiff,

v.

MEGAN J. BRENNAN,

Defendant.

Case No. 18-cv-07569-HSG

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## I. INTRODUCTION

Plaintiff Kyung Sook Jones alleges that the United States Postal Service ("USPS") sent her home early in retaliation for Plaintiff's filing of an Equal Employment Opportunity ("EEO") complaint. Following the Court's Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, the sole remaining cause of action in this matter is Plaintiff's retaliation claim under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C, § 2000e–3. *See* Dkt. No. 50. On March 16, 2021, the Court granted Defendant's request to bifurcate the trial, with a liability phase to be followed by a damages phase if necessary. The liability phase of this matter was tried to the Court, sitting without a jury, on March 29, 2021. At trial, Defendant moved for judgment as a matter of law under Rule 50(a) at the end of Plaintiff's case, and renewed the motion at the close of its own case. *See* Dkt. No. 99. The Court took the motions under submission. *See id.* The Court has carefully considered the evidence presented at trial, the exhibits admitted into evidence, the parties' briefs, and the parties' arguments. This memorandum opinion will constitute the Court's Findings of Fact and Conclusions of Law.

## II. JURISDICTION

The Court has original jurisdiction under 28 U.S.C. §§ 1331. Venue is proper in this

United States District Court
Northern District of California

district pursuant to 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practice occurred here.

## III. DISCUSSION

The Court was presented with several factual disputes relevant to the primary question of whether Plaintiff was sent home early in retaliation for the protected activity of pursuing her EEO complaint. These factual disputes include whether Heather McTigue was aware of Plaintiff's EEO complaint prior to June 2016 and whether Ms. McTigue's allocation of limited-duty work to Plaintiff was comparable to the allocation of that work to another similarly-situated employee. Defendant primarily contends that Plaintiff is unable to establish liability because she cannot show causation. *See* Dkt. No. 86 (Defendant's Trial Brief). As will be discussed in more detail below, the Court concludes that Defendant is not liable for retaliation under Title VII.

### A. Findings of Fact

Plaintiff began working at the USPS in Eureka, California in 1986. Trial Tr. 55:12-14. Due to workplace injuries, Plaintiff has been on limited duty since 2003. *Id.* at 75:23-24. Plaintiff filed a EEO complaint in May 2016. Trial Ex. 1-4F at 10, Bates 0005 (EEO Complaint). Plaintiff testified that after she filed her EEO complaint, she was sent home early on June 21, 2016 and noted that she had not "been sent home early before." Trial Tr. at 59:11-14. Plaintiff testified that she was sent home early "[f]rom June 2016 through January 2020" and that she was told there was no work available, even though she saw that work was available.[1] *Id.* at 59:22-25.

Ms. McTigue testified that she did not know that Plaintiff intended to file an EEO complaint and only became aware of Plaintiff's EEO complaint when the investigator contacted her in August 2016. *Id.* at 105:19-24. She further testified that the complaint did not play a role in how work was assigned to Plaintiff. *Id.* at 105:25-106:5. Because the Court finds her testimony credible, the Court finds that Ms. McTigue became aware that Plaintiff filed her EEO complaint in August, 2016, suggesting that the filing of the EEO complaint could not have played a role in the

---

[1] Notably, when Plaintiff asked Helen Simon if she had observed whether Plaintiff was sent home early, Ms. Simon stated that she did not see that Plaintiff was sent home early until 2019. Trial Tr. at 49:7-10.

2

allocation of limited-duty work before then.

Plaintiff contends that she was sent home early in retaliation from June 2016 through January 2020. The evidence did not support this claim for the period between September 1, 2017 to March 31, 2019, as Plaintiff acknowledged at trial that she was not sent home early during this period. *Id.* at 88:10-12.[2] And the evidence did not support this claim as to dates beyond April 1, 2019, since it is not credible to claim that assignment decisions in this timeframe were retaliation for a 2016 EEOC complaint, after a significant period (over eighty weeks) during which Plaintiff incontestably was not sent home early.[3]

As for the period from June 2016 through August 31, 2017, the evidence showed that a similarly-situated employee was also sent home early for lack of available work. Every limited-duty employee has a modified work assignment. *Id.* at 99:9-12. Plaintiff was authorized to work six hours with duties limited to casing mail, performing station input, distributing 3982's to carriers, and sorting Undeliverable Bulk Business Mail ("UBBM"). Trial Ex. 3 at 188 (2009 Modified Work Assignment); *see also* Trial Tr. at 100:23-101:2. Light-duty assigned tasks are shared among limited-duty employees. *See* Trial Tr. at 86:1-3. The duties assigned to a limited-duty employee depend on the employee's restrictions, but could include tasks such as sorting UBBM. *Id.* at 97:2-12. However, sorting UBBM is not solely a limited-duty task and is instead work that belongs to the "clerk craft."[4] *Id.* at 11:7-17, 104:10-105:9. A limited-duty carrier who is permitted to work six hours a day is not guaranteed six hours of work. *See id.* at 77:15-18, 98:2-6. Instead, the number of hours of work per day "would depend on how much work" is "available within their restrictions." *Id.* at 98:2-6, 122:14-17. The Court thus finds that Plaintiff was not

---

[2] The summary of time and attendance records introduced at trial indicates that from September 1, 2017 to March 31, 2019, there were effectively no dates that Plaintiff worked less than her hourly limit. Trial Tr. at 130:21-131:25; *see* Ex. 131 at 31-32 & n.1.

[3] Plaintiff filed other EEO complaints in 2019, *see* Trial Ex. 3 at 00011-00014, Trial Tr. at 67:24-68:22, in April 2020, *see* Trial Ex. 50 at 2, Trial Tr. 69:23-70:15, and in September 2020, *see* Trial Ex. 4 at 00006; Trial Tr. at 71:18-72:12. The Court admitted these complaints as evidence that they were filed, but no evidence at trial credibly suggested retaliation for any of those complaints either.

[4] "Craft" refers to the "different groups that work for the post office," such as clerks, carriers, and mail handlers. Trial Tr. at 105:3-9. Ms. McTigue explained that each craft has its "own national contract[]." *Id.* at 105:7-9.

3

1  guaranteed six hours of work a day.

2  There were several other limited-duty carriers in the Eureka post office in 2016 and 2017. *Id.* at 101:11-17. Ms. McTigue testified that Plaintiff was sent home early based on a lack of work available for her and other limited-duty employees at the Eureka post office. *See id.* at 102:24-103:20. Ms. McTigue explained that some days there was not enough work that could be done consistent with Plaintiff's medical restrictions because other limited-duty employees "also were doing the same type of duties" and supervisors attempted to "make it equitable amongst everybody." *Id.* at 122:8-17. This explanation is well-supported by the record.

The Court finds that a similarly situated employee was sent home early in a comparable way and often on the same days. Specifically, George Clark, a limited-duty carrier who was limited to working four hours casing mail and sorting UBBM, was sent home early due to lack of work in 2016 and 2017. *Id.* at 101:20-102:9. Ms. Marie Gina Gonzalez, the time and attendance control system ("TACS") coordinator, summarized the time and attendance records for Plaintiff and Mr. Clark. *See* Trial Ex. 131 (Summary of Time Attendance Reports – Plaintiff Kyung Sook Jones, January 1, 2017 through December 31, 2020); Trial Ex. 133 (Summary of Time Attendance Reports – Eureka Limited Duty Carriers, June 1, 2016 through August 31, 2017). Ms. Gonzalez testified that from January 1, 2017 through August 31, 2017, Plaintiff worked less than her hourly limit fifty-eight times. Trial Tr. at 130:21-131:5; *see* Ex. 131. Ms. Gonzalez also confirmed that over a similar period from 2016 to 2017, the number of days that Plaintiff and Mr. Clark worked less than their hourly limit amounted to 111 for Plaintiff and 135 for Mr. Clark. Trial Tr. at 134:22-135:7; *see* Ex. 133. In light of this record, the Court finds that there were several days when there was not enough limited-duty work available and that Defendant's explanation for sending Plaintiff home early is credible.

### B. Conclusions of Law

Title VII makes it unlawful for an employer to retaliate against an employee because the employee has taken action to enforce rights protected under Title VII. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 730 (9th Cir. 1986). To prove a *prima facie* case of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) she was subsequently subjected to an

4

adverse employment action; and (3) a causal link exists between the protected activity and the employer's action. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citation omitted). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Id*. (citation omitted). "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 693 (9th Cir. 2017) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). If a plaintiff establishes a *prima facie* case of unlawful retaliation, then the burden shifts to the defendant to offer evidence "that the challenged action was taken for legitimate, non-discriminatory reasons." *Id*. (citation omitted). If the defendant provides a legitimate explanation, the burden of production shifts back to plaintiff to show that the defendant's explanation is pretextual. *Id*. (citation omitted).

Plaintiff has not met her burden to establish a prima facie case of unlawful retaliation. It is undisputed that Plaintiff engaged in a protected activity by filing an EEO complaint. Trial Tr. at 6:25-7:2. But Plaintiff has not shown a causal link between the filing of her EEO complaint and being sent home early. Any temporal proximity between Plaintiff filing the complaint and being sent home early is insufficient to establish causation, particularly in light of evidence that a similarly-situated employee was sent home early in a comparable way over the relevant period. Further, Ms. McTigue did not learn that Plaintiff filed her EEO complaint until August 2016, after Plaintiff claims the retaliatory conduct began in June 2016. Accordingly, because Plaintiff has not established causation, the Court concludes that Plaintiff has carried her burden.

Even if Plaintiff had met her burden, Defendant has provided a legitimate, non-discriminatory reason, namely that Plaintiff was sent home early based on a lack of available work for her and other limited duty employees at the Eureka post office. And Plaintiff has not shown that Defendant's stated reason is pretextual. Accordingly, Defendant is not liable for retaliation under Title VII.

//

## IV. CONCLUSION

For the foregoing reasons, the Court finds in favor of Defendant on Plaintiff's claim of retaliation under Title VII. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: 5/13/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge